UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-----------------------------------------------------------X

JUSTEN-MARKS MANUFACTURING, LTD.,

        Plaintiff,

      - against -

SOFT THINGS, INC., et al.,

        Defendants,

-----------------------------------------------------------X

**REPORT AND
RECOMMENDATION**

06 CV 1742 (ERK)

      On April 12, 2006, plaintiff Justen-Marks Manufacturing, Ltd. ("Justen-Marks") filed suit against defendants Soft Things, Inc. ("Soft Things"), A&C Import Export Services, Inc. ("A&C"), and A&J Import Export Services, Inc. ("A&J"), seeking damages based on the alleged misdelivery by A&C of ten containers of plush toys to Soft Things without an original bill of lading. On June 20, 2006, Justen-Marks filed an amended complaint. Soft Things failed to appear in the action, and a default judgment was entered against Soft Things on July 20, 2006.

      On December 19, 2006, A&C filed a Second Amended Answer and Cross Claims, denying plaintiff's claim of misdelivery on the grounds that the release of the shipments was authorized either directly or through a pattern of dealing, and alleging third party claims against THI-Group, Ltd. ("THI"), the agent A&C hired to arrange for the imports. On May 5, 2008, THI entered a limited appearance for the purpose of challenging personal jurisdiction.

      Presently before this Court is THI's motion to dismiss for lack of personal jurisdiction. For the reasons set forth below, it is respectfully recommended that THI's motion be denied.

## FACTUAL AND PROCEDURAL BACKGROUND

On August 13, 2007, Justen-Marks filed a motion for summary judgment against A&C, which was denied by the district court on January 30, 2008 on the grounds that the motion was premature and that A&C should be given the opportunity to obtain discovery from THI. In its January 30, 2008 opinion, the district court set forth a summary of the salient facts underlying this dispute. Those facts are incorporated by reference herein and are only summarized briefly for purposes of understanding the issues of personal jurisdiction raised by the parties.

Plaintiff Justen-Marks has its main office in Hong Kong and manufactures plush toys in a factory in Shanghai. Soft Things, a New York corporation with an office in Brooklyn, arranged with plaintiff on ten occasions over a period of six months to have shipped and delivered various goods for a total of $231,531.60. (Am. Compl. ¶¶ 10-30). A&C, also a New York corporation with an office in Brooklyn, acted as agent and freight forwarder for the shipment of goods from Shanghai to New York on behalf of Soft Things. A&C employed THI as its Shanghai agent responsible for arranging for the containers to be picked up at plaintiff's facility in Shanghai and delivered to the docks for shipment to New York. In each instance, the ocean carrier was to issue a bill of lading listing THI as the shipper and A&C as the consignee. The bills of lading issued by the shipper listed A&C as the "notify party." THI then issued three copies of A&C's original house bills of lading to plaintiff, listing "Shanghai Justen Gift Toy Co., Ltd." as the shipper. The consignee was listed as "to order," and the "notify party" was listed as Soft Things.

THI contends that once the goods were loaded aboard the ocean carriers in Shanghai, THI had no further physical involvement with the shipments, including the ultimate delivery of the shipments to the consignee. A&C alleges that it released the goods to Soft Things only after

receiving emails from THI, which stated that Justen-Marks had given authorization for A&C to release the goods. A&C then released the goods to Soft Things, and Soft Things failed to pay for the shipments.

On April 17, 2006, Justen-Marks commenced this action against Soft Things and A&C, alleging that Soft Things was liable for "goods shipped and delivered," breach of contract, unjust enrichment, conversion, "account stated," and "for recovery on checks," and alleging breach of contract and conversion against A&C. Following service, Soft Things failed to answer or otherwise respond to the Complaint. The district court entered a default judgment against Soft Things on August 2, 2006 for the sum of $258,251.39. Justen-Marks' claims against A&C for breach of contract and conversion remain.

On December 19, 2006, A&C filed a Second Amended Complaint and Cross Claims, alleging that third-party defendant THI committed the torts of fraud and negligent misrepresentation. On July 11, 2008, THI moved to dismiss A&C's third party claims against it on the grounds that the court lacks personal jurisdiction over THI. The motion was referred to the undersigned to prepare a Report and Recommendation on September 2, 2008.


## MOTION TO DISMISS

A. Standards and Burden of Proof

On a motion to dismiss for lack of personal jurisdiction pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure, the party seeking to assert jurisdiction – in this case, A&C – bears the initial burden of establishing that the court has personal jurisdiction over a particular defendant. See Tex. Int'l Magnetics, Inc. v. Aurign - Aurex, Inc., 334 F.3d 204, 206 (2d Cir.

2003); Whitaker v. American Telecasting, Inc., 261 F.3d 196, 208 (2d Cir. 2001); Metropolitan

Life Ins. Co. v. Robertson-Ceco. Corp., 84 F.3d 560, 566 (2d Cir.), cert. denied, 519 U.S. 1006

(1996) (citing Robinson v. Overseas Military Sales Corp., 21 F.3d 502, 507 (2d Cir. 1994)).

Plaintiffs may be subject to three different levels of burden of proof, depending on which

of three levels of investigation is conducted. Prior to discovery, the Court's consideration is

limited to the pleadings, and plaintiff need only make a prima facie showing of jurisdiction to

defeat a motion to dismiss. See Metropolitan Life Ins. Co. v. Robinson Ceco Corp., 84 F.3d at

566; In re Ski Train Fire in Kaprun, Austria, 230 F. Supp. 2d 376, 381 (S.D.N.Y. 2002). Where

the parties have conducted extensive discovery regarding defendant's contacts with the forum

state, the plaintiff's prima facie showing must include facts that, if credited by the trier of fact,

would be sufficient to establish jurisdiction. See Bank Brussels Lambert v. Fiddler Gonzalez &

Rodriguez, 171 F.3d 779, 784 (2d Cir. 1999); Metropolitan Life Ins. Co. v. Robinson Ceco

Corp., 84 F.3d at 567. Finally, where there is a full evidentiary hearing, the plaintiff must

establish jurisdiction by a preponderance of the evidence. CutCo Indus., Inc. v. Naughton, 806

F.2d 361, 364 (2d Cir. 1986); Sunrise Indus. Jt Venture v. Ditric Optics, Inc., 873 F. Supp. 765,

769-70 (E.D.N.Y. 1995).

Here, A&C asserts that it should be held to the lowest standard, requiring only a prima

facie showing, while THI asserts that A&C should be held to the intermediate or highest

standard, because the parties have conducted discovery aimed at the question of personal

jurisdiction and the Court could determine that this discovery is the equivalent of a full

evidentiary hearing. Here, the Court finds that A&C must meet the intermediate standard,

because the parties have conducted discovery regarding THI's contacts with the forum state but

4

there has been no evidentiary hearing. As such, A&C's prima facie showing must include facts

that, if credited by the trier of fact, would be sufficient to establish jurisdiction.


B. The Traditional Analysis

In determining whether personal jurisdiction exists in a diversity action, the court looks to

the law of the state in which the court is located: "[t]he amenability of a foreign corporation to

suit in a federal court in a diversity action is determined in accordance with the law of the state

where the court sits, with 'federal law' entering the picture only for the purpose of deciding

whether the state's assertion of jurisdiction contravenes a constitutional guarantee." Id. at 567

(quoting Arrowsmith v. United Press Int'l, 320 F.2d 219, 223 (2d Cir. 1963)). See also Bank

Brussels Lambert v. Fiddler Gonzalez & Rodriguez, 171 F.3d at 784 (noting that district courts

must "engage in a two-part analysis. First, they determine whether there is jurisdiction over the

defendant under the relevant forum state's laws. . . . Second, they must determine whether an

exercise of jurisdiction under these laws is consistent with federal due process requirements");

Cutco Indus., Inc. v. Naughton, 806 F.2d at 365 (holding that where, as here, the Court's

jurisdiction is based on diversity, the law of the forum state generally determines personal

jurisdiction). In this case, both parties appear to agree that the Court should look to New York

law to determine personal jurisdiction.

In order to resolve A&C's motion to dismiss, the Court must conduct a two-part inquiry

under New York law to determine: 1) whether THI is amenable to service of process under the

state's laws; and 2) whether the court's assertion of jurisdiction over the parties is in accordance

with the constitutional requirements of due process. Id. (quoting Savin v. Ranier, 898 F.2d 304,

306 (2d Cir. 1990)); see also Chaiken v. VV Publ'g Corp., 119 F.3d 1018, 1025 (2d Cir. 1997), cert. denied, 522 U.S. 1149 (1998).

A&C concedes that THI is a Chinese corporation with its principal place of business in Taipei and with offices in Mainland China. Under New York law, there are two statutory provisions under which a court may exercise jurisdiction over a "foreign" non-domiciliary: N.Y.C.P.L.R. ("C.P.L.R.") Sections 301 and 302(a). Accordingly, A&C has argued that jurisdiction exists over THI, pursuant to C.P.L.R. § 301, because THI engages in regular and systematic business in New York through its eleven New York agents. A&C has also argued that jurisdiction exists over THI, pursuant to C.P.L.R. § 302(a)(1) and (3), because THI "regularly and systematically does business in New York with A&C, and upon information and belief, with other companies in New York, and because the actions complained of herein are torts committed outside this state that THI knew or should have known had effects on business transactions within this state." (Werner Aff.[1] Ex. A ¶ 80).

### 1) General Jurisdiction Under C.P.L.R. Section 301

### a) Standards

C.P.L.R. § 301 confers "general" jurisdiction over a non-domiciliary defendant on causes of action unrelated to conduct in New York and permits New York courts "to exercise in personam jurisdiction over foreign defendants who are 'present' within the State by virtue of their 'doing business' here." McGowan v. Smith, 52 N.Y.2d 268, 272, 437 N.Y.S.2d 643, 645

---

[1]Citations to "Werner Aff." refer to the Affirmation of Jon Werner In Support of Motion to Dismiss for Lack of Personal Jurisdiction, dated July 11, 2008.

419 N.E.2d 321, 323 (1981); see Photoactive Prods. Inc. v. AL-OR Int'l Ltd., 99 F. Supp. 2d 281,

287 (E.D.N.Y. 2000). To satisfy the requirements of C.P.L.R. § 301, there must be a showing

that the defendant corporation does business in the state "continuously and systematically and

demonstrating a fair measure of permanence to warrant a finding of constructive presence within

New York." Landoil Resources Corp. v. Alexander & Alexander Serv., Inc., 918 F.2d 1039,

1043 (2d Cir. 1990); see also Tauza v. Susquehanna Coal Co., 220 N.Y. 259, 266-67, 115 N.E.

915 (1917).

Among the facts considered by the courts are whether the corporation has offices in New

York; whether it solicits business in New York; whether it has bank accounts or property in New

York; and whether it has employees in New York. See id. at 288; see also Wiwa v. Royal Dutch

Petroleum Co., 226 F.3d 88, 98 (2d Cir. 2000); Hoffritz for Cutlery, Inc. v. Amajac, Ltd., 763

F.2d 55, 58 (2d Cir. 1985). However, as the court in Fashion Fragrances & Cosmetics v.

Croddick noted: "There is no bright line test to determine whether or not a corporation 'does

business' in New York in satisfaction of Section 301; in fact, the standard is imprecise." No. 02

CV 6294, 2003 WL 342273, at *3 (S.D.N.Y. Feb. 13, 2003) (citing Sterling Novelty Corp. v.

Frank & Hirsch Distrib. Co., 299 N.Y. 208, 210, 86 N.E.2d 564 (1949)). See also Pieczenik v.

Cambridge Antibody Tech. Group, No. 03 CV 6336, 2004 WL 527045, at *3 (S.D.N.Y. March

16, 2004) (stating that "these factors are only intended to provide guidance - they do not amount

to a 'formula' for testing jurisdiction").

A foreign corporation is considered to be present in New York if it regularly and

systematically conducts business in New York, see Simonson v. Int'l Bank, 14 N.Y.2d 281, 285,

200 N.E.2d 427, 429, 251 N.Y.S.2d 433, 436 (1964); see also Frummer v. Hilton Hotels Int'l, 19

N.Y.2d 533, 536, 227 N.E.2d 851, 853, 281 N.Y.S.2d, 41, 43 (1967), whether the business is conducted by the corporation or by an agent. Frummer v. Hilton Hotels Int'l, 19 N.Y.2d at 538, 227 N.E.2d at 854, 281 N.Y.2d at 45; see also Russell v. Hilton Int'l of Puerto Rico, Inc., No. 94 CV 2552, 1994 WL 38516 at *2 (S.D.N.Y. Feb. 4, 1994). The test for determining whether a New York representative becomes an agent of a foreign corporation for purposes of jurisdiction under § 301 is whether the agent, acting both with the authority and for the substantial benefit of the foreign corporation, "carries out activities in New York that are more than 'mere solicitation' and are sufficiently important to the foreign corporation that if it did not have a representative to perform them, the corporation's own officials would undertake to perform substantially similar services." Volkswagon de Mexico S.A. v. Germanischer Lloyd, 768 F. Supp. 1023, 1027 (S.D.N.Y. 1991) (citing Gelfand v. Tanner Motor Tours, Ltd., 385 F.2d 116, 121 (2d Cir. 1967)).

In determining whether an agency relationship exists, the test does not require the existence of a formal agency agreement. See Frummer v. Hilton Hotels Int'l, 19 N.Y.2d at 538, 227 N.E.2d at 854, 282 N.Y.S.2d at 45. Rather, the key question is whether the in-state representative has the authority to take actions that are binding on the foreign corporation. Russell v. Hilton Int'l of Puerto Rico, Inc., 1994 WL 38516 at *2. See also Ball v. Metallurgie Hoboken-Overpelt, S.A., 902 F.2d 194, 199 (2d Cir. 1990) ("actions taken by the New York-based entity with respect to third parties that [are] binding on the foreign defendant" are sufficient to support an inference of agency).

b) <u>Analysis</u>

In opposing A&C's assertion of personal jurisdiction, THI submitted the Declaration of

Louis Tseng, Junior Vice President of THI, dated July 10, 2008 ("Tseng Decl."). According to

Mr. Tseng, THI was incorporated on February 4, 1987 as a Republic of China corporation with

headquarters in Taipei, Taiwan, and offices in Hong Kong, Vietnam and China. (Tseng Decl. ¶¶

2-3). Listed on the Over-the-Counter Securities Exchange of the Republic of China, THI-Group

is a parent holding company with separately incorporated subsidiaries, including Shanghai THI

Transport Co., Ltd. and Yaohua Freight Forwarding Co., Ltd., which provide "domestic logistics

services in China." (<u>Id.</u> ¶ 4).

According to Mr. Tseng, THI does not and never has had offices in New York or

anywhere in the United States; THI's only contact with the United States is that it holds a license

with the Federal Maritime Commission ("FMC") to operate as an Ocean Transportation

Intermediary/Non-Vessel Operating Common Carrier and it maintains the bond required by the

FMC. (<u>Id.</u> ¶ 9). Mr. Tseng represents that THI has no personal or real property, bank accounts,

or telephone numbers in New York, and that there are no officers or directors located within the

state. (<u>Id.</u> ¶ 6). THI has never been registered to do business in New York, and has no

authorized agents to accept service of process here in New York. (<u>Id.</u> ¶ 5). Of the company's

over 800 employees, none are located in New York, and none visit the state for business

purposes. (<u>Id.</u> ¶¶ 6, 7). Nor are any of THI's suppliers or vendors here. (<u>Id.</u> ¶ 6).

Mr. Tseng further represents that the company does not perform any marketing in New

York. (<u>Id.</u> ¶ 7). Although THI maintains a website that has an English translation, THI does not

actively solicit business from New York through the website, nor does it mail marketing

materials or attend marketing or industry events in New York. (Id.)

THI concedes that its only contacts with New York are agency contracts which THI has entered into with eleven companies, one of which is A&C. (Id. ¶ 10). Under these agency contracts, THI and its agency partners, such as A&C, refer business to each other and act as each other's agents in areas where the other does not operate. (Id. ¶ 11; Ex. A[2]). Thus, each contract establishes THI as the non-exclusive representative for the sale and handling of cargo in Taiwan, Hong Kong, China and Vietnam. (Id. ¶ 11; Ex. A). The agency partners under these contracts act as non-exclusive forwarding agents for THI, for sea and air traffic. (Id. ¶ 11; Ex. A). Among other things, the parties to the contracts arrange shipments, notify consignees, collect endorsed original bills of lading, collect the freight and charges shown on the house bill of lading, and transfer these to their counterpart under the agency agreement. (Id. ¶ 12; Ex. A). Under the contracts, the parties share equally in the profits and losses arising out of the ocean carriage of cargo except where negligence can be shown. (Id. ¶ 13; Ex. A). According to Mr. Tseng, the powers under the contracts are circumscribed and do not confer on the agency partners the power to act as a general agent on behalf of THI; nor do the contracts establish the agency partners as THI's agent for service of process. (Id. ¶¶ 14-15).

Mr. Tseng asserts that none of these agency contracts were negotiated or signed in New York and that the contracts specifically provide that they are to be determined by Hong Kong law, with any dispute between the parties to be determined by arbitration in Hong Kong.[3] (Id. ¶

---

[2]The Non-Exclusive Agency Agreement ("Agency Agreement") is attached as Exhibit A to the Tseng Declaration.

[3]The Court notes that since neither THI nor A&C have moved to compel arbitration, the Court has not considered whether this dispute should be settled pursuant to the arbitration provision in the Agency Agreement.

16; Ex. A ¶¶ 17.1, 18.1).

Moreover, Mr. Tseng represents that THI's involvement in the shipments at issue was limited to picking up goods in Shaghai, booking the ocean carriage, and arranging for delivery of the goods to the ship. (Id. ¶ 20). According to Mr. Tseng, A&C was responsible for handling the cargo once it reached New York, including its ultimate delivery. (Id. ¶ 21).

A&C contends that THI is subject to the general jurisdiction of New York because it has eleven non-exclusive agents in New York, which, under the existing agency agreements, are required to perform four physical acts that THI cannot perform remotely. (A&C Mem.[4] at 9-10). These physical acts include breaking bulk, notifying consignees of shipments upon arrival, collecting full sets of original house bills of lading, and collecting the freight and charges shown on the house bills of lading and transferring them to the other party. (Tseng Decl. Ex. A ¶ 4.1). In addition, A&C contends that THI has on occasion asked its agents to perform customs clearance and ground transportation services in the United States. (Id.) Thus, A&C argues that even though THI may not have office space, employees, or bank accounts, it qualifies as physically present through its agents. (Id. at 10 (citing Gelfand v. Tanner Motor Tours, Ltd., 385 F.2d at 121; Volkswagon de Mexico, S.A. v. Germanisher Lloyd, 768 F. Supp. at 1027)).

The Tseng Declaration makes it clear that THI has none of the types of contacts that courts have traditionally found to provide a basis for general jurisdiction -- namely, offices in New York, solicitation of business in New York, bank accounts or property in New York, or employees in New York. Thus, A&C's claim of general jurisdiction over THI depends on

---

[4]Citations to "A&C Mem." refer to the Memorandum of Law In Opposition to THI-Group, Ltd.'s Motion to Dismiss the Complaint for Lack of Personal Jurisdiction, dated November 26, 2008.

whether THI has a New York agent that provides services that "are sufficiently important to the foreign corporation that if it did not have a representative to perform them, the corporation's own officials would undertake to perform substantially similar services." Volkswagon de Mexico, S.A. v. Germanisher Lloyd, 786 F. Supp. at 1027; see also Gelfand v. Tanner Motor Tours, Ltd., 385 F.2d at 121. A&C claims that as long as an in-state entity performs tasks for THI which must be physically performed in New York and cannot be performed remotely, that in-state entity satisfies the test articulated in Gelfand and cited in Volkswagen and becomes an agent for jurisdictional purposes. (A&C Mem. at 9-10).

However, the test does not turn on whether A&C or any of THI's ten other New York agents perform some tasks for THI that must be physically completed in New York, but rather whether any of the eleven agents has authority to take actions that are binding on THI. See Russell v. Hilton Int'l of Puerto Rico, Inc., 1994 WL 38516 at *2; see also Ball v. Metallurgie Hoboken-Overpelt, S.A., 902 F.2d 194, 199 (2d Cir. 1990). Based on the rights and obligations detailed in the Agency Agreement, the testimony about the nature of the relationship between A&C and THI, and the specific tasks A&C performs for THI, there is no evidence that any of THI's eleven non-exclusive agency partners have the authority to make decisions that are binding on THI.

Accordingly, based on an aggregate of the contacts with New York, this Court finds that A&C has not carried its burden of establishing general jurisdiction over THI pursuant to C.P.L.R. § 301.

2) Specific Jurisdiction Under C.P.L.R. § 302(a)(1)

a) Standards

C.P.L.R. § 302(a)(1) provides an alternative test for the exercise of personal jurisdiction over a non-domiciliary defendant. Section 302(a)(1) provides as follows:

> (a) Acts which are the basis of jurisdiction. As to a cause of action arising from any of the acts enumerated in this section, a court may exercise jurisdiction over any non-domiciliary, or his executor or administrator, who in person or through an agent:
>
> 1. Transacts any business within the state or contracts anywhere to supply goods or services in the state.

N.Y. C.P.L.R. § 302(a)(1) (McKinney 1990). In order to assert jurisdiction under this section, the party must show that: (1) defendant "transacts business" in New York; and (2) the cause of action arises out of that business such that there is an "articulable nexus" between the cause of action and the business activity. See Credit Lyonnais Securities (U.S.A.), Inc. v. Alcantara, 183 F.3d 151, 153 (2d Cir. 1999).

In order to obtain personal jurisdiction over a party under the "transaction of business" prong of Section 302(a)(1), "the party need not be physically present in the state at the time of service;" rather, jurisdiction may be asserted against anyone who "'purposely availed [himself] of the privilege of conducting activities within New York and thereby invoked the benefits and protections of its laws.'" Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez, 171 F.3d at 787 (quoting Parke-Bernet Galleries v. Franklin, 26 N.Y. 2d 13, 16, 308 N.Y.S.2d 337, 256 N.E.2d 506 (1970)). There is no requirement under this prong that there be "regular and systematic business activities." Palace Exploration Co. v. Petroleum Dev. Co., 41 F. Supp. 2d

13

427, 432 (S.D.N.Y. 1998). "[A] 'single transaction would be sufficient to fulfill this requirement'. . .so long as the relevant cause of action also arises from that transaction." Id. (citations omitted). The proper inquiry is to determine whether, based on the totality of defendant's activities within the forum, the defendant has performed purposeful acts within the state in relation to the contract. Sterling Nat'l Bank & Trust Co. of N.Y. v. Fidelity Mortgage Investors, 510 F.2d 870, 873 (2d Cir. 1975).

In Longines-Wittanuer Watch Co. v. Barnes & Reinecke, Inc., 15 N.Y.2d 443, 466-67, 261 N.Y.S.2d 8, 26, 209 N.E.2d 68, 81-82 (1965), the New York Court of Appeals found that a foreign corporation that had solicited business through advertisements in the state and used a New York distributor to ship goods into the state had "transacted business" for purposes of this section. However, where the defendant was domiciled out of state, had no office, bank account, or telephone listings in New York, did not solicit business here and conducted his personal business out of state, there was no jurisdiction because there must be some transaction attributable to the defendant "which occurs in New York." Ferrante v. Lasker-Goldman Corp., 26 N.Y.2d 280, 284, 309 N.Y.S.2d 913, 258 N.E.2d 202 (1970). Similarly, the fact that there may be numerous phone calls, mailings, and facsimile transmissions in connection with the negotiation of the underlying contract has been held to be insufficient for jurisdictional purposes. See Palace Exploration Co. v. Petroleum Dev. Co., 41 F. Supp. 2d at 432-33. No court "has extended 302(a)(1) to reach a nondomiciliary who never entered New York, who was solicited outside of New York, who performed outside of New York such services as were performed, and who is alleged to have neglected to perform other services outside of New York." Mayes v. Leipziger, 674 F.2d 178, 185 (2d Cir. 1982); see also Bank Brussels Lambert v. Fiddler Gonzalez

14

& Rodriguez, 171 F.3d at 789.

Under the second prong of Section 302(a)(1), jurisdiction may be exercised over a nondomiciliary who "contract[s] anywhere to supply goods or services in the state." New York courts have placed emphasis on the location of contract negotiations in determining whether a defendant transacted business in New York. Dogan v. Harbert Constr. Corp., 507 F. Supp. 254, 260 (S.D.N.Y. 1980) (citing George Reiner & Co. v. Schwartz, 41 N.Y.2d 648, 394 N.Y.S.2d 844, 363 N.E.2d 551(1977)). "[S]ignificant contract negotiations in New York constitute transaction of business here for jurisdictional purposes," regardless of whether the negotiations are preliminary or the contract is executed in New York. Mayer v. Josiah Wedgwood & Sons, Ltd., 601 F. Supp. 1523, 1530-1531 (S.D.N.Y. 1985) (citing Bastille Properties, Inc. v. Hometels of Am., Inc., 476 F. Supp. 175, 177 (S.D.N.Y. 1979)). See also Levisohn, Lerner, Berger, & Langsam v. Med. Taping Sys., Inc., 10 F. Supp. 2d 334, 340 (S.D.N.Y. 1998) (holding that "where a defendant has entered the state, even for one day, to negotiate and execute the contract on which suit is eventually brought, § 302(a)(1) gives jurisdiction") (internal citations omitted). However, even though the defendant never entered the state to negotiate a contract or to complete performance of the contract, there may be long-arm jurisdiction over a defendant who has minimal contacts with the state and has entered a contract to supply goods or services in the state. Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez, 171 F.3d at 789 (citing Island Wholesale Wood Supplies, Inc. v. Blanchard Indus., Inc., 101 A.D.2d 878, 879-80 476 N.Y.S.2d 192 (2d Dep't 1984)).

Similar to the test for agency under C.P.L.R. § 301, the test for agency under C.P.L.R. § 302 is not a strict or formal one; it is enough that the entity in New York is acting under some

control from the foreign corporation and is acting for the foreign corporation's benefit. Cutco Indus., Inc. v. Naughton, 806 F.2d at 366; Mayer v. Josiah Wedgewood & Sons, Ltd., 601 F. Supp. 1523, 1530 (S.D.N.Y. 1985). The Second Circuit has held that a foreign corporation exercises sufficient control over a New York agent to establish jurisdiction if there is joint control over a business enterprise. Cutco Indus., Inc. v. Naughton, 806 F.2d at 366.

   b) Analysis

   A&C argues that THI is subject to specific jurisdiction under C.P.L.R. § 302 because A&C's claims against THI arise out of THI's transaction of business in New York. Specifically, A&C contends that: (1) THI was present in New York to negotiate an agency agreement between A&C and THI; (2) THI acted as an agent on behalf of A&C pursuant to the agency agreement for the shipment of eight containers; (3) A&C's claims against THI arose out of the shipment of those eight containers; and (4) THI profited pursuant to a joint venture with A&C from the shipment of those eight containers. (A&C Mem. at 11-12).

   There is a dispute between Mr. Tseng and Mr. Gottesman as to whether the agreements between THI and any its eleven New York agency partners were negotiated in New York. (Compare Tseng Decl. ¶ 15 with Gottesman Decl.[5] ¶ 18). Mr. Gottesman asserts that he "remember[s] meeting [the President of THI, David Yen,] personally in New York on one occasion -- approximately five years ago, at which meeting [Mr. Yen and Mr. Gottesman] negotiated the terms of [THI and A&C's] current Agency Agreement. (Gottesman Decl. ¶ 18). Meanwhile, Mr. Tseng asserts that "none of the agency contracts which THI has entered into

---

[5]Citations to "Gottesman Decl." refer to the Declaration of Emil Gottesman, dated November 25, 2008 and submitted in support of the A&C Mem.

with its agency partners were negotiated or signed in New York." (Tseng Decl. ¶ 15). Mr. Tseng

provides no basis for his general assertion that the contracts were not negotiated in New York,

nor does he appear to be the party at THI responsible for negotiating the agency agreements,

whereas Mr. Gottesman claims to remember first-hand that he met with Mr. Yen in New York

and negotiated the contract. In addition, Mr. Tseng's claim that no THI employee visits New

York for business purposes is contradicted by the deposition testimony of Vice President of THI,

Yany He,[6] Mr. Tseng's superior at THI, who concedes that Mr. Yen does visit New York for

business purposes. See infra n.5. As such, there appears to be a dispute that may turn on an

assessment of credibility or that may be resolved after further discovery. For purposes of this

motion, the Court finds that Mr. Gottesman's assertion that this contract was negotiated in New

York, if credited by the trier of fact, would be sufficient to satisfy the transaction of business

requirement under § 302(a)(1). Since contract negotiations in New York constitute transaction of

business here for jurisdictional purposes, the Court finds that THI's contacts satisfy the first

prong of the test under § 302(a)(1).

However, even if the trier of fact were to credit Mr. Tseng's account that none of the

agency agreements were executed in New York, Section 302(a)(1) may still provide long-arm

jurisdiction over THI as long as THI has minimal contacts with the state and has entered a

contract to supply goods or services in the state. Bank Brussels Lambert v. Fiddler Gonzalez &

Rodriguez, 171 F.3d at 789. Although the negotiation of the contract in New York provides

support for the claim that THI conducts business in New York, the dispositive question is not

---

[6]Citations to "He Depo." refer to the Deposition Via Telephone of Witness Yang He, on behalf of Third Party Defendant, conducted on October 27, 2008 and attached as Exhibit B to the Declaration of David Sack ("Sack Decl.").

where the parties negotiated the contract, but rather whether THI has sufficient contacts with New York to constitute transacting business.

Mr. Gottesman asserts and Ms. He concedes in her deposition testimony that Mr. Yen has traveled to New York on more than one occasion over the last seven years to visit with THI's overseas agents.[7] Although Ms. He was uncertain of the purpose of these visits, she testified that the purpose may have been to strengthen the relationships between THI and its New York agents. (See He Depo. at 14-15). These are the types of purposeful acts that courts have found to constitute purposely availing oneself of the privilege of conducting activities within New York. See, e.g., Sterling Nat'l Bank & Trust Co. of N.Y. v. Fidelity Mortgage Investors, 510 F.2d at 873 (finding that a representative of defendant voluntarily visiting an office of plaintiff in New York on one occasion is a purposeful act that supported a finding of specific jurisdiction); see also Agency Rent A Car System, Inc. v. Grand Rent A Car Corp., 98 F.3d 25, 29 (2d Cir. 1996) (considering "whether, after executing a contract with a New York business, the defendant has visited New York for the purpose of meeting with parties to the contract regarding the relationship" an example of a purposeful act within the forum). That a defendant never entered the state in connection with its dealings with the New York plaintiffs has been held to be a

---

[7]Mr. Tseng disputes this claim, claiming that "none of THI's employees visit New York for business purposes." (Tseng Decl. ¶ 7). However, the trier of fact may credit Ms. He's admission in her deposition, because she had no reason to make such an admission if it were not true and, as such, it is more credible than Mr. Tseng's self-serving statement. The Court further notes that even considering Ms. He's testimony, there is a dispute as to how often Mr. Yen visits New York. In his declaration, Mr. Gottesman says that he understands that Mr. Yen visits New York on an annual basis, but he does not indicate any basis for this understanding. (Gottesman Decl. ¶ 18). In her deposition testimony, Ms. He says that Mr. Yen has visited New York more than once in the past seven years but less than once a year. (He Depo. at 14-15). For the reasons stated above, the Court credits Ms. He's deposition testimony. As such, the Court finds that Mr. Yen has visited New York between two and seven times in the last seven years.

critical factor in finding that a defendant did not transact business in New York. See, e.g., Ferrante Equip. Co. v. Lasker-Goldman Corp., 26 N.Y.2d at 284 (holding that there is no specific jurisdiction over defendant in New York because "there is no evidence that [defendant] or his agents solicited business here or even entered this State in connection with his dealings with [plaintiff]" and that, to find that defendant transacted business in New York, "there must be some transaction attributable to [defendant] *which occurs in New York*" (emphasis added)). Thus, the fact that Mr. Yen has entered New York more than once to maintain THI's relationships here – even if he does not solicit new business or negotiate the contracts on these trips – means that he "'purposely avail[s] [himself] of the privilege of conducting activities within New York and thereby invoke[s] the benefits and protections of its laws.'" Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez, 171 F.3d at 787 (quoting Parke-Bernet Galleries v. Franklin, 26 N.Y. 2d 13, 16, 308 N.Y.S.2d 337, 256 N.E.2d 506 (1970)).

Accordingly, the Court finds that the evidence, if credited by the trier of fact, would support the conclusion that THI transacts business in New York for purposes of Section 302(a)(1).

In addition to proving that THI conducts business in New York, A&C must also prove that the causes of action arise out of THI's business in New York, such that there is an "articulable nexus" between the causes of action and the business activity. THI argues that where the agreement between THI and A&C was formed is immaterial because A&C's claims against THI are not for breach of contract, but rather for the torts of fraud and negligent

misrepresentation. (THI Rep. Mem.[8] at 9). Thus, THI argues that the fraud and negligent

misrepresentation that A&C alleges must arise out of THI's business in New York. Courts have

found the necessary substantial nexus for a tort claim, even when the defendant's contacts with

New York relate more directly to a breach of contract claim than to the tort alleged. See

Levisohn, Lerner, Berger, & Langsam v. Med. Taping Sys., Inc., 10 F. Supp. 2d 334 at 340. In

this case, the emails that form the basis of the alleged tort claims arise out of the duties that THI

is obligated to perform for A&C under the Agency Agreement that was negotiated in New York.

Among each party's duties, as detailed in the Agency Agreement, is the duty to "provide the

other with all information needed to carry out its obligations under this Agreement and keep the

other party informed of any relevant element which may affect the rendering of the services in

the agreed territories." (Tseng Decl. Ex. A ¶ 3.3). Here, A&C claims that THI sent emails to

A&C stating that THI had obtained telex releases from plaintiff authorizing the release of the

goods to Soft Things, and that A&C, in reliance on these emails, released the goods despite the

fact that the plaintiff had not actually authorized the release. THI sent these emails as a direct

result of its obligation to A&C under the Agency Agreement.

Accordingly, the Court finds that there is an "articulable nexus" between the cause of

action and the business activity, and, thus, A&C has established a prima facie case of jurisdiction

under Section 302(a)(1).

---

[8]Citations to "THI Rep. Mem." refer to the Reply Memorandum of Law in Further
Support of Third Party Defendant THI-Group, Ltd.'s Motion to Dismiss for Lack of Personal
Jurisdiction, dated December 8, 2008.

3) Specific Jurisdiction Under C.P.L.R. § 302(a)(3)

As an alternative basis for asserting jurisdiction over THI, A&C argues that personal jurisdiction is proper under C.P.L.R. § 302(a)(3).

a) Standards

Under C.P.L.R. § 302(a)(3), jurisdiction is properly exercised over anyone who "commits a tortious act without the state causing injury to person or property within the state . . . , if he (ii) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce . . . ." N.Y.C.P.L.R. § 302(a)(3).

To establish personal jurisdiction over a defendant under Section 302(a)(3), a plaintiff must show that a tortious act was committed outside of New York, and that the act caused injury inside New York. "[C]ourts determining whether there is injury in New York sufficient to warrant § 302(a)(3) jurisdiction must generally apply a situs-of-injury test, which asks them to locate the 'original event which caused the injury.'" Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez, 171 F.3d at 791 (internal citations omitted). This original event is generally distinguished not only from the initial tort but also from the final economic injury. Id. See, e.g., Hermann v. Sharon Hosp., Inc., 135 A.D.2d 682, 683, 522 N.Y.S.2d 581 (2d Dep't 1987); see also Fantis Foods, Inc. v. Standard Importing Co., Inc., 49 N.Y.2d 317, 425 N.Y.S.2d 783, 402 N.E.2d 122 (1980); Kramer v. Hotel Los Monteros S.A., 57 A.D.2d 756, 757, 394 N.Y.S.2d 415 (1st Dep't 1977). The fact that the plaintiff is a New York corporation and so any financial injuries might ultimately be felt by the plaintiff in New York is not alone sufficient to establish injury within the state. See, e.g., Uebler v. Boss Media A.B., 363 F. Supp. 2d 499, 508 (E.D.N.Y. 2005) (holding that "the occurrence of financial consequences in New York due to the

fortuitous location of plaintiffs in New York is not a sufficient basis for jurisdiction under §

302(a)(3) where the underlying events took place outside New York") (citing Whitaker v. Amer.

Telecasting, Inc., 261 F.3d 196, 201 (2d Cir. 2001)); Mareno v. Rowe, 910 F.2d 1043, 1046 (2d

Cir. 1990). Rather, the relevant inquiry is "where the critical events associated with the dispute

took place." See, e.g., Palace Exploration Co. v. Petroleum Dev. Co., 41 F. Supp. 2d at 435

(internal citations omitted); United Bank of Kuwait, PLC v. James M. Bridges, Ltd., 766 F.

Supp. 113, 116 (S.D.N.Y. 1991) (internal citations omitted).

In the case of fraud committed in another state, the critical question is "where the first

effect of the tort was located that ultimately produced the final economic injury." Bank Brussels

Lambert v. Fiddler Gonzalez & Rodriguez, 171 F.3d at 792. In the case of misrepresentation, the

injury is located where the defendant acts in reliance on plaintiff's misrepresentation. See, e.g.,

Palace Exploration Co. v. Petroleum Dev. Co., 41 F. Supp. 2d at 435; Hargrave v. Oki Nursery,

Inc., 636 F.2d 897, 899 (2d Cir. 1980); Mije Assoc. v. Halliburton Serv., 552 F. Supp. 418, 420

n.5 (S.D.N.Y. 1982) (stating that "the tort of fraud [is] not 'complete' until the fraudulent

statements [are] relied upon in New York").

b) Analysis

The alleged fraud and misrepresentation at issue here classifies as "a tortious act without

the state" under Section 302(a)(3) because THI made the alleged false statements in Shanghai

when it sent the emails from Shanghai to New York. See Palace Exploration Co. v. Petroleum

Dev. Co., 41 F. Supp. 2d at 435 (holding that "it is settled in New York that where a defendant

knowingly sends a false statement into a state intending that it be relied upon. . .he has, for

jurisdictional purposes, acted outside the state") (internal citations omitted). Thus, the critical

question here is where the injury occurred for purposes of Section 302(a)(3).

THI argues that, under the situs-of-injury test, the critical events giving rise to A&C's alleged injuries were THI's sending of emails to A&C from China; thus, THI contends that the injury occurred in China, not New York. (THI Rep. Mem. at 11). A&C argues that THI misinterprets the situs-of-injury test, and that the Second Circuit applies the status-of-injury test not to the place where the original event occurred but to the place where the original event caused the injury. (A&C Mem. at 13). As such, A&C argues that the original injury occurred not when THI made the false statements in Shanghai, but when, in reliance on those statements, A&C released the goods in New York, allegedly without the authority of Justen-Marks. (Id. at 14).

Here, the critical events associated with the dispute took place in New York, when A&C, in reliance on THI's misrepresentation, released the goods to Soft Things, because "the tort of fraud [is] not 'complete' until the fraudulent statements [are] relied upon in New York." Mije Assoc. v. Halliburton Serv., 552 F. Supp. at 420 n.5. See also Hargrave v. Oki Nursery, Inc., 636 F.2d at 899; Palace Exploration Co. v. Petroleum Dev. Co., 41 F. Supp. 2d at 435.[9] THI attempts

---

[9]THI claims that a number of courts have reached conclusions supporting its argument that the critical events giving rise to A&C's alleged injuries occurred in China when THI sent the emails to A&C. However, the cases that THI cites simply stand for the proposition that "there must be a more direct injury within the State than the indirect financial loss resulting from the fact that the injured person resides or is domiciled here." Cooperstein v. Pan-Oceanic Marine, Inc., 124 A.D.2d 632, 633, 507 N.Y.S.2d 893 (2d Dep't 1986), appeal denied 69 N.Y.2d 611, 517 N.Y.S.2d 1025, 511 N.E.2d 84 (1987). See also Nasson v. Seagal, 263 F. Supp. 2d 596, 614 (E.D.N.Y. 2003); Weiss v. Brant, No. 93 CV 0750, 1995 WL 362394, *4 (E.D.N.Y. May 31, 1995); Crouch v. Atlas Van Lines, Inc., 834 F. Supp. 596, 604 (N.D.N.Y. 1993); Niagara Mohawk Energy Mktg., Inc. v. Entergy Power Mktg. Corp., 270 A.D. 872, 873-874, 706 N.Y.S.2d 794 (4th Dep't 2000). As these cases indicate, a plaintiff must take action in New York in reliance on a defendant's fraud or misrepresentation for the tort to have occurred in New York; the fraud or misrepresentation does not occur in New York simply because the defendant

to distinguish this case from <u>Palace</u> and <u>Hargrave</u> on the basis that, unlike in those cases, there is no direct injury in New York here because A&C did not immediately pay funds in reliance on the defendants' misrepresentations. However, this distinction is not persuasive. The Court acknowledges that A&C's reliance on THI's alleged misrepresentation did not trigger an immediate payment of funds. However, it did trigger the immediate release of goods worth $231,531.60 for which Justen-Marks was entitled to immediate payment. Finally, if, as Justen-Marks alleges, the release had not been authorized because Soft Things had not paid for the shipments, A&C was exposed to liability for the full cost of the goods the moment it released the goods to Soft Things. Further, if THI believes that no injury occurred to A&C inside New York when it released the goods, is unclear what other injury THI believes occurred to A&C outside New York when THI made the alleged false statements in China.

Accordingly, for purposes of Section 302(a)(3), the Court finds that the original event which caused the injury to A&C occurred in New York.

Jurisdiction predicated upon Section 302(a)(3) also requires a showing that THI expects or should reasonably expect the act to have consequences in the state. In this case, at the time it made the alleged false statements that it had obtained releases from Justen-Marks, THI knew that A&C was relying on those statements in deciding to release the goods in New York to Soft Things. Accordingly, THI should reasonably have expected that its actions would have consequences in the state.

---

made an out-of-state misrepresentation and the plaintiff loses money in New York. Here, unlike in the cases THI cites, A&C took action in New York in reliance on THI's alleged misrepresentations when it released the goods to Soft Things. As such, the tort was not completed until A&C released the goods in New York.

Finally, it is undisputed that THI derives substantial revenue from interstate or international commerce through its eleven non-exclusive agency partnerships in which THI shares the profits/losses on a 50/50 basis for all shipments generated from joint efforts. (Tseng Decl. Ex. A ¶ 6.4).

Thus, A&C has established a prima facie case of jurisdiction under Section 302(a)(3).

C. Due Process

Once personal jurisdiction is established under state law, the court must next determine whether the assertion of personal jurisdiction complies with the constitutional requirements of due process. The due process requirement is designed to protect parties who do not have meaningful ties to a foreign jurisdiction from being subjected to judgments there. It "'gives a degree of predictability to the legal system that allows potential defendants to structure their primary conduct with some minimum assurance as to where the conduct will and will not render them liable to suit.'" Metropolitan Life Ins. Co. v. Robertson-Ceco Corp., 84 F.3d 560, 567 (2d Cir. 1996) (quoting Burger King Corp. v. Rudzewicz, 471 U.S. 462, 471-72 (1985)). The due process determination involves an assessment first as to whether the defendant has sufficient contacts with the forum state to justify the exercise of personal jurisdiction, see International Shoe Co. v. Washington, 326 U.S. 310 (1945), and second, as to whether the assertion of jurisdiction is reasonable under the circumstances and "comports with 'traditional notions of fair play and substantial justice.'" Id. at 316. The Second Circuit has held that courts must weigh the relative strengths and weaknesses of the two prongs of the due process test; where a plaintiff's showing on minimum contacts is weak, the reasonableness showing must be greater in order for

a forum state to validly assert personal jurisdiction over the defendant. See <u>Metropolitan Life</u> <u>Ins. Co. v. Robertson-Ceco Corp.</u>, 84 F.3d at 568-69.

1) <u>Minimum Contacts</u>

a) <u>Standards</u>

The "minimum contacts" portion of the due process analysis protects non-resident defendants from litigating in an inconvenient forum and ensures that federal courts do not exercise jurisdiction "beyond the limits imposed on them by their status as coequal sovereigns in a federal system." <u>World-Wide Volkswagen Corp. v. Woodson</u>, 444 U.S. 286, 292 (1980). To serve as a basis for personal jurisdiction, the defendant's conduct establishing minimum contacts must be purposefully directed toward the forum state, see <u>Burger King Corp. v. Rudzewicz</u>, 471 U.S. at 474-76, and its connection with the state should lead it to "reasonably anticipate being haled into court there." <u>World-Wide Volkswagen Corp. v. Woodson</u>, 444 U.S. at 297. Thus, "a foreign corporation 'purposefully avails' itself of a particular forum where the corporation places its products into interstate commerce and reasonably foresees that those products will be delivered into that forum." <u>Kernan v. Kurz-Hastings, Inc.</u>, 997 F. Supp. 367, 374 (W.D.N.Y. 1999). As such, "[t]he forum state does not exceed its powers under the Due Process Clause if it asserts personal jurisdiction over a corporation that delivers its products into the stream of commerce *with the expectation* that they will be purchased by consumers in the forum state." <u>World-Wide Volkswagen Corp. v. Woodson</u>, 444 U.S. at 297-98 (emphasis added). However, the law is well-settled that the placement of a product into the stream of commerce, without more, is generally not enough to establish purposeful activity directed toward a state sufficient to

26

confer personal jurisdiction. See Ashai Metal Indus. Co. v. Superior Court of Calif., 480 U.S. 102, 112 (1987); World-Wide Volkswagen Corp. v. Woodson, 444 U.S. at 297.

In establishing minimum contacts, A&C must either establish that "specific" jurisdiction exists through a showing that A&C's claims arise from or are related to THI's activities in the forum, or that "general" jurisdiction exists, based on defendant's "continuous and systematic general business contacts." Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414-16 (1984); see also Metropolitan Life Ins. Co. v. Robertson-Ceco Corp., 84 F.3d at 567-568.

When the case is predicated on general jurisdiction and the events that give rise to the suit are unrelated to any activities conducted by the defendant in the forum, a more stringent showing of minimum contacts is required than if specific jurisdiction was asserted. See Metropolitan Life Ins. Co. v. Robertson-Ceco Corp., 84 F.3d at 568.[10] For general jurisdiction, the courts have required a showing of "continuous and systematic business contacts" with the forum. Metropolitan Life Ins. Co. v. Robertson-Ceco Corp., 84 F.3d at 568. Continuous and systematic general business contacts have been found where the defendant has an office, maintained records, and held corporate meetings in the forum state, albeit for a limited period of time. See Perkins v. Benguet Consol. Mining Co., 342 U.S. 437 (1952). However, where a defendant merely made a purchase of equipment in the forum state, sent employees into the state for training and sent one officer for contract negotiations, but never operated or solicited business or sold products

---

[10]The minimum contacts analysis is "fact-intensive," and the Second Circuit has directed courts to examine a defendant's contacts with the forum state over a reasonable time period under the circumstances. See Metropolitan Life Ins. Co. v. Robertson-Ceco Corp., 84 F.3d at 569. The usual time period for assessing minimum contacts is a period of years prior to the initiation of the lawsuit. Id. (citing cases suggesting that the appropriate time period is from five to seven years).

reaching the forum, courts have not found general jurisdiction. See, e.g., Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. at 408.[11]

Where, as here, the claim arises out of, or relates to, the defendant's contacts with the forum and so is predicated on specific jurisdiction, "minimum contacts exist 'where the defendant purposefully availed itself of the privilege of doing business in the forum and could foresee being haled into court there.'" Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez, 305 F.3d 120, 127 (2d Cir. 2002) (internal citations omitted). See also Burger King Corp. v. Rudzewicz, 471 U.S. at 472-76; World-Wide Volkswagen Corp. v. Woodson, 444 U.S. at 297.

   b) Analysis

Here, because A&C's claim of personal jurisdiction arises out of THI's contacts with New York, A&C need only show that THI purposefully availed itself of the privilege of doing business in New York and could reasonably foresee being haled into court there to satisfy the minimum contacts requirement of the due process analysis. As detailed above, Mr. Yen's trips to

---

[11]Although there is no clear line delineating what is sufficient in terms of numbers of sales or amounts of revenue for general jurisdiction, the Second Circuit has addressed this issue. See, e.g., Chaiken v. VV Publishing Corp., 119 F.3d 1018 (2d Cir. 1997) (holding that the forum contacts of the defendant publisher which was sued for libel - - namely, circulation of four copies of an Israeli newspaper delivered daily to Massachusetts, amounting to 0.0004% of the paper's total circulation, and 183 copies of the weekly Sunday edition - - did not cerate sufficient contacts to satisfy the due process clause), cert. denied, 118 S.Ct. 1169 (1998); Metropolitan Life Ins. Co. v. Robertson-Ceco Corp., 84 F.3d 560 (holding that $4,000,000 in sales in the forum state over a seven year period, which amounts to an average of $571,428.57 per year, may not be sufficient to satisfy the "continuous and systematic" business requirement standing alone). Where the number of sales and the absolute and relative amount of revenue generated in a forum is minimal, a defendant should not be subject to the general jurisdiction of the forum. See, e.g., Day v. Snowmass Stables, Inc., 810 F. Supp. 289 (D. Col. 1993) (finding no general personal jurisdiction where the defendant, a manufacturer of neck yoke rings, had only one contact with the forum state which involved sales of less than $700 per year to two forum-based entities, constituting only 0.5% of defendant's business).

New York to maintain THI's eleven non-exclusive agency partnerships are purposeful acts designed to maintain THI's business in New York. Given THI's license to do business in the U.S., its extensive interactions with its eleven agency partners, and its knowledge that it arranged for goods to be delivered here, there is no reason to believe that THI did not "reasonably anticipate" that it might be haled into court in New York. See World Wide Volkswagen Corp. v. Woodson, 444 U.S. at 297.[12] Accordingly, because A&C's claim of jurisdiction over THI is premised on specific jurisdiction, A&C has satisfied the minimum contacts requirement under the due process clause.

### 2) Reasonableness

### a) Standards

With respect to the second element in the due process analysis - - the reasonableness inquiry - - courts look to a five-factor test evaluating:

> (1) the burden that the exercise of jurisdiction will impose on the defendant; (2) the interests of the forum state in adjudicating the case; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of the controversy; and (5) the shared interest of the states in furthering substantive social policies.

Metropolitan Life Ins. Co. v. Robertson-Ceco Corp., 84 F.3d at 568.

---

[12]The Court notes that THI claims in its brief that its due process rights would be violated if it were subject to specific jurisdiction because it could not foresee being haled into court to defend this matter. (THI Rep. Mem. at 13). However, THI provides no further explanation or rationale to support the assertion that it could not foresee defending a lawsuit here, and, as the Court has found, THI does have minimum contacts with New York such that it should reasonably anticipate being haled into court in New York.

The question is whether the assertion of personal jurisdiction under these circumstances would be "reasonable" and comport with "traditional notions of fair play and substantial justice." International Shoe Co. v. Washington, 326 U.S. at 316. As the Second Circuit noted in Wiwa v. Royal Dutch Petroleum Co., 226 F.3d 88, 99 (2d Cir. 2000) (citing Metropolitan Life Ins. Co. v. Robertson-Ceco Corp., 84 F.3d at 568), "[a]s a general rule, in making the constitutional analysis once a plaintiff has made a 'threshold showing' of minimum contacts, the defendant must come forward with a 'compelling case that the presence of some other considerations would render jurisdiction unreasonable.'"

b) Analysis

Neither party has addressed in its papers the issue of whether asserting personal jurisdiction over the defendants would comport with traditional notions of fair play and substantial justice, so there is nothing before the Court which would demonstrate whether litigating this action in this Court would impose a unique burden on THI beyond the usual burden that is present when a party has to defend a lawsuit. While much of the evidence, including the witnesses with knowledge of the alleged misrepresentations that THI sent to A&C, is presumably in China, given that THI has the burden to come forward with a "compelling case that the presence of some other considerations would render jurisdiction unreasonable," the Court finds that the exercise of jurisdiction in New York would impose no unreasonable burden on THI. See Metropolitan Life Ins. Co. v. Robertson-Ceco Corp., 84 F.3d at 573 (finding that the burden factor favored defendant because none of the evidence was located in the forum state).

Turning to the second factor of the analysis, A&C is a New York corporation, and so presumably New York would have an interest in providing a forum for its citizens to seek redress

for its injuries. See, e.g., Del Ponte v. Universal City Dev. Partners, Ltd., No. 07 CV 2360, 2008 WL 169358, at *12 (S.D.N.Y. Jan. 16, 2008) (holding that "New York has a clear interest in providing a forum for its citizens to seek redress for injuries"). Under the third prong, A&C's interest in obtaining convenient and effective relief weighs in favor of jurisdiction in New York, particularly because A&C is defending the case brought by Justen-Marks in New York. Similarly, under the fourth factor, the interstate judicial system's interest in obtaining the most efficient resolution of the controversy also weighs in favor of resolving the conflict in New York, since this dispute between A&C and THI is intimately tied to the outcome of the underlying case between Justen-Marks and A&C.

Accordingly, because THI has made no showing that the exercise of jurisdiction in New York would be unreasonable, the Court finds that the exercise of jurisdiction over THI does not violate the due process clause.

## CONCLUSION

Given the Court's conclusion that A&C has provided evidence that, if credited by the trier of fact, would be sufficient to make a prima facie showing of specific jurisdiction over THI under both Sections 302(a)(1) and (3), and that the exercise of jurisdiction does not violate the due process clause, it is respectfully recommended that THI's motion to dismiss for lack of personal jurisdiction be denied.

Any objections to this Report and Recommendation must be filed with the Clerk of the Court, with a copy to the undersigned, within ten (10) days from receipt of this Report. Failure to file objections within the specified time waives the right to appeal the District Court's order. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(e).

**SO ORDERED.**

Dated: Brooklyn, New York
March 19, 2009

Cheryl L. Pollak
United States Magistrate Judge
Eastern District of New York